FILED

99 MAY 13 AM 9:56

U.S. DISTRICT COURT
N.D. OF ALABAMA

ENTERED
MAY 13 1999

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| BARBARA HOSEA-STUDDARD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No.   CV 97-J-2788-S |
| | ) | |
| BESSEMER STATE TECHNICAL | ) | |
| COLLEGE, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

This cause comes before this Court on Defendant's motion for summary judgment (doc. 20).

### Undisputed Material Facts

In 1988, Bessemer State Technical College ("the College") hired Plaintiff as a part-time commercial art lab instructor. During the winter academic quarter of 1989, she was promoted to Commercial Art Instructor. In March 1989, Plaintiff received a lateral administrative transfer to the position of placement follow-up analyst. In 1991, Plaintiff applied for and was offered the position of Director of the Displaced Homemaker and Sex Bias Elimination Program at the College. Said program is federally funded and is under the umbrella of the MIRROR Program. By virtue of becoming Director of the Displaced Homemaker and Sex Bias Elimination Program, Plaintiff also became Director of the

MIRROR program for the College. For purposes of this lawsuit, it is sufficient to refer to Plaintiff's position as director of the MIRROR program. Plaintiff has an annual contract with the College which has been renewed each year since 1990. Plaintiff has been director of the MIRROR program at the College continually since 1991 and remains in said position today.

In September 1993, Plaintiff filed a Title VII charge with the EEOC ("the 1993 charge") accusing the College of race discrimination. In April 1994, Plaintiff amended said charge ("the 1994 charge"). In August 1995, Plaintiff filed a Title VII suit in this court based upon these charges ("the 1995 lawsuit"). In October 1995, Plaintiff filed an EEOC charge ("the 1995 charge") alleging retaliation against her for filing the 1995 lawsuit. On January 31,1997, the Honorable Sharon Blackburn granted summary judgment in favor of defendants and against Plaintiff on all claims made in the 1995 action. Judge Blackburn's ruling was later affirmed by the Eleventh Circuit without comment. *Hosea-Studdard v. Bessmer State* [sic], 134 F.3d 386 (Table) (11th Cir. 1997). On March 10, 1997, Plaintiff filed an amendment to the 1995 charge ("the March 1997 charge"). Finally, on May 21, 1997, Plaintiff filed an amendment to the March 1997 charge ("the May 1997 charge"). On October 21, 1997, Plaintiff filed the instant action ("the 1997 lawsuit") alleging retaliation by the College and Defendants Bailey and Moon in their official capacities.

In or around November and December 1996, Plaintiff's supervisors began receiving complaints from students and their families regarding the selection criteria and admittance programs of the MIRROR program. These complaints included students who reportedly received admission notices from the program only to be told there were additional requirements which they did not meet. Other complaints centered around the scheduling of an introductory psychology course ("PSH-110") required by Plaintiff for the program. Plaintiff teaches this course which is offered only once a year. Plaintiff rescheduled the course for one student, Renita Crenshaw, but would not allow other students to do the same. On December 6, 1996, Defendant Moon, Dean Mattie Ray and Cynthia Anthony sent a letter to Plaintiff notifying her of the student complaints and expressing concern. On February 6, 1997, the Department Chair of the Allied Health Programs sent a memorandum to Defendant Moon regarding access to the MIRROR program. Certain Allied Health students were unable to avail themselves of the benefits of the MIRROR program because a required course in their major met at the same time as PSH -110.

On April 16, 1997, Bailey established a fact-finding committee of faculty members to address these concerns about the selection and admission procedures for the MIRROR program. The committee interviewed four (4) students and two (2) instructors about the issues under investigation, but Plaintiff refused to speak with the committee. Despite Plaintiff's failure to cooperate, the committee had to reach a conclusion. The committee

concluded that the MIRROR program used inconsistent selection procedures. However, the committee did not find enough evidence to express an opinion on the question of discrimination by Plaintiff. (Defendant's Ex. C at 0000 05.)

Plaintiff contends that the purpose of the fact-finding committee was simply to harass her in retaliation for her 1995 lawsuit. Plaintiff also contends that Defendants solicited students to make derogatory comments about her and stated to students that they were going to take disciplinary action against Plaintiff. Finally, Plaintiff contends that Defendants used security officers to deliver memoranda to her in order to intimidate her.

## Summary judgment standard

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). As the Supreme Court has explained the summary judgment standard:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since the complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

4

*Celotex Corp.* 477 U.S. at 322-23. The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrates the absence of a genuine issues of material fact. *Id.* at 323. The burden then shifts to the nonmoving party to "go beyond the pleadings and by ... affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324, Fed. R. Civ. P. 56(e). In meeting this burden the nonmoving party "must do more than simply show that there is a metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). That party must demonstrate that there is a "genuine issue for trial." Fed. R. Civ. P. 56(c); *Matsushita*, 475 U.S. at 587, *see also Anderson*, 477 U.S. at 249. The non-movant must "demonstrate that there is indeed a material issue of fact precluding summary judgment." *Clark v. Clark & Coats, Inc.*, 929 F.2d 604, 608 (11th Cir.1991).

On motions for summary judgment, the court is to construe the evidence and factual inferences arising therefrom in the light most favorable to the nonmoving party. See *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). The substantive law will identify which facts are material and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *Fitzpatrick v. City of Atlanta*, 2 F.3d

1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Id*. at 249. The basic issue before the court on a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Holcombe v. Alabama Dry Dock & Shipbuilding*, 1998 WL 758012 (S.D. Ala.); citing *Anderson*, 47 U.S. at 251-252.

### Analysis

*I.   Proper Parties*

Plaintiff's First Amended complaint asserts Title VII, §1981 and §1983 claims against Defendants "BESSEMER STATE TECHNICAL COLLEGE. A division of the Alabama State Department of Education; W. Michael Bailey, in his capacity as President of Bessemer State Technical College and Ron Moon, in his capacity as Dean of Human Resources and Academic Support for Bessemer State Technical College" (doc. 4). The College is an arm of the State of Alabama. Defendants Bailey and Moon are named only in their official capacities as state actors.

Title VII suits are appropriate only against the Plaintiff's employer, the College. Title VII defines "employer" as "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more

calendar weeks in the current or preceding calendar year, and any agent of such a person...." 42 U.S.C. § 2000e(b). To the extent that Plaintiff names Bailey and Moon in their official capacities as Title VII Defendants, Plaintiff is simply reasserting her claims against the College. Thus, it is appropriate to analyze Title VII claims against all three Defendants as one.

Plaintiff's suit against Bailey and Moon in their official capacities on her §§1981 & 1983 claims entitles them to all defenses available to their employer, the College, as an arm of the State of Alabama.

*II.   Title VII*

Plaintiff alleges that Defendants retaliated against her for statutorily protected expression under Title VII. This alleged retaliation is the basis for Plaintiff's Title VII complaint in this case. "In order to prevail [on a Title VII retaliation claim], the plaintiff must first establish a prima facie case by showing (1) statutorily protected expression, (2) adverse employment action, and (3) a causal link between the protected expression and the adverse action." *Goldsmith v. City of Atmore*, 996 F.2d 1155, 1163 (11th Cir. 1993) (citations omitted). Defendants concede that Plaintiff engaged in statutorily protected activity by filing her previous lawsuit. However, the parties disagree over whether the facts taken in the light most favorable to Plaintiff demonstrate that adverse job action was taken against Plaintiff.

The first defense which must be addressed with respect to Plaintiff's claims is that of claim preclusion or collateral estoppel. Defendants refer to this in their briefs as *res judicata*. *Res Judicata*, or claim preclusion, acts to bar certain claims within a lawsuit if there has been "(1) a final judgment on the merits; (2) rendered by a court of competent jurisdiction; [with ] (3) identity of parties; and (4) identity of causes of action." *Twigg v. Sears, Roebuck & Co.*, 153 F.3d 1222, 1225 (11th Cir. 1998) (citing *Kemp v. Birmingham News Co.*, 608 F.2d 1049, 1052 (5th Cir.1979)). In this case, there was a final judgment on the merits in the 1995 lawsuit. Judge Blackburn entered summary judgement in favor of Defendants and against Plaintiff on January 31, 1997. The judgment was rendered by the United States District Court for the Northern District of Alabama which is a court of competent jurisdiction to adjudicate Title VII claims such as the ones made by Plaintiff in the 1995 lawsuit. The parties to the 1995 suit were Barbara Hosea-Studdard, Plaintiff, and Bessemer State Technical College and the Alabama State Board of Education, Defendants. Obviously the Plaintiff and the Defendant College are the same in the 1995 and 1997 lawsuits. The only question is whether Bailey and Moon, Defendants in the 1997 lawsuit but non-parties to the 1995 lawsuit, are within the parameters of claim preclusion. Bailey and Moon are sued only in their official capacities as administrators of the College (*i.e.*, state officers). Any liability that may be found on behalf of Bailey or Moon in this case will be imputed to the College because Title VII only allows for suit of

one's employer. *See, generally,* 42 U.S.C. § 2000e, *et seq.* Thus, Bailey and Moon do not destroy the identity of the parties between the 1995 lawsuit and the 1997 lawsuit.

The final prong of claim preclusion is identity of claims or causes of action. Plaintiff's 1995 lawsuit included a claim for retaliation in violation of Title VII. Thus, there is identity of at least some claims between the 1995 and 1997 lawsuits. Since all other prerequisites for claim preclusion have been met, any claim shared between the 1995 and 1997 lawsuits is barred from re-litigation by the doctrine of claim preclusion. Plaintiff submitted an affidavit in October 1996 in opposition to Defendants' motion for summary judgment in the 1995 lawsuit. In that affidavit Plaintiff stated the following:

> 37. The defendants did harass and retaliate against me for filing a charge of discrimination. ... After I was granted the right to file a lawsuit against the defendants due to their discriminatory practices, there was an escalation in the defendants harassment and retaliation against me. This harassment and retaliation has been prevalent from the time that I filed my initial report up until the present. The retaliatory /harassment practices consisted of:
>
> ...
> (b) Hand-delivered letters and memoranda using the services of a security employee as a method of creating a hostile work environment for me.
>
> ...
> (d) Repeated denial or delay of secretarial services to try to prevent me from performing my duties and responsibilities in a timely manner and thus, requiring me to pay for needed services, with my own personal income.
>
> (e) Complete dismantling of my Program at the beginning of the funding period without prior, sufficient notification or justification. I was given three days to pack everything in the

>    building A Career Center and relocate to a small office in the Millsap Industrial Training Center. ...
>
> ...
>
> (i) The defendants developed new leave policies regarding procedures that I was to follow if it were necessary to leave the college campus or take sick or annual leave. Initially, if I were leaving the campus I had to report to Ron Moon. If I were going to use annual or sick leave, I had to report to Mattie Hendrix. Ray. ...

Defendants' Supplemental Exhibits (doc. 35) at Tab 1. Plaintiff's claims in this lawsuit that she was retaliated against by use of security personnel to deliver memoranda and denial of secretarial services, and change of leave policy have already been adjudicated by Judge Blackburn's summary judgment order of January 31, 1997. Plaintiff's claims that they relocated her office space in retaliation have also been adjudicated to the extent that she relies on the move from the Building A Career Center to the Millsap Industrial Training Center. However, Plaintiff's claims regarding moving her office have not been adjudicated with regard to the recent move of her office into the main administrative building. Since these certain claims have already been adjudicated between these parties in a prior lawsuit, they are barred from re-litigation in the instant suit by the doctrine of *res judicata*. Thus, summary judgment is due to be granted on those claims of retaliation.

Plaintiff's remaining claims of adverse job action are (1) that she was moved from her office in the Millsap's Center to the new administrative building, (2) that she was placed on probation for three academic quarters and continues to be under threat of probation to this day, (3) that a fact-finding committee was convened to investigate the

selections/ admissions processes of the MIRROR program, (4) that students were solicited to give unflattering statements about Plaintiff, and (5) that she was denied the opportunity to attend a technical assistance meeting as the college's representative leaving her to pay her way to the meeting herself. Plaintiff claims that these actions by Defendants constitute "adverse employment actions" in violation of Title VII under *Wideman v. Wal-Mart Stores, Inc.*, 141 F.3d 1453 (11th Cir. 1998). In *Wideman*, the Eleventh Circuit joined several other circuits in holding that "adverse job action" for purposes of Title VII need not rise to the level of "ultimate employment action" such as termination or demotion. *Id.* at 1456. This court disagrees with Plaintiff's assessment of the actions she lists as retaliatory.

Taking all facts in the light most favorable to the Plaintiff, Plaintiff's office was relocated from the Millsap's Center to the new administrative building. Plaintiff was moved out of an office she had previously complained about and filed suit over in the 1995 action. She was moved to a new building. Plaintiff complains that the office is not big enough or private enough. However, the office is apparently clean, safe, accessible and located in a new facility. Moving Plaintiff's office from one about which she had previously complained to a clean, safe, new, accessible one in an administrative building does not rise to the level of adverse employment action under Title VII.

Plaintiff also complains that she was denied the opportunity to attend a technical assistance meeting as the College's representative individual with responsibility for Sex

Bias Elimination and Single Parent/ Displaced Homemakers/ Single Pregnant Women Projects. Therefore, she had to pay her own expenses to attend the meeting. This complaint of retaliation has not appeared in this case before the motion for summary judgment stage. However, the court will address it in the interest of thoroughness. Plaintiff is the Director of the Displaced Homemaker and Sex Bias Elimination Program and the MIRROR program. The College appointed Cynthia Anthony, a black female and Plaintiff's immediate supervisor, to attend the conference. It is not an adverse job action under Title VII or *Wideman* for Defendants to send a higher ranking faculty member from the same department to the conference.

Plaintiff also alleges that she was placed on probation for three academic quarters and remains under threat of probation to this day. It is true that Plaintiff was informed by Bailey in May 1996 of intent to place Plaintiff on probation due to several policy violations. However, Plaintiff appealed the probation, and it was never enforced. *See* Plaintiff's Exhibit A at ¶36; Plaintiff's deposition at 92. Since the probation was never enforced, it cannot be an adverse job action. Plaintiff contends that she remains "under threat of probation" to this day. Plaintiff is apparently referring to the fact that it took some time for her appeal of the probation to be resolved. However, she has been informed by her union, the Alabama Education Association, that the matter has been resolved and the file is being closed. Plaintiff's Exhibit A at ¶36. Thus, there is no remaining threat of probationary status. Even if the appeal was still continuing, Plaintiff

12

offers nothing to support her contention that the time delay is an adverse job action except her own subjective feelings. *See* Plaintiff's Ex. A at ¶36.

Plaintiff's final complaint, and the primary basis for this lawsuit, is that Defendants convened a fact-finding committee to investigate alleged discrepancies in the selection/ admissions procedures for the MIRROR program. Plaintiff also complains that Defendant solicited students to make statements against her during this process. Plaintiff offers no evidence that Defendants solicited negative statements against her. The only "evidence" she offers is the affidavit of Renita Crenshaw wherein Ms. Crenshaw says that she felt like the committee was trying to get her to say something bad about Plaintiff. Plaintiff's Ex. C at 3-4. However, Ms. Crenshaw's affidavit does not detail any of the questions asked of her or statements made to her by the Defendants or the committee members. Rather, she simply states her subjective feelings which are not appropriate evidence to oppose a motion for summary judgment. *See* Plaintiff's Ex. C.

Regarding the formation of the fact-finding committee itself, Plaintiff has offered no evidence that this is an adverse job action within the scope of Title VII and *Wideman*. The fact-finding committee, with which Plaintiff refused to meet, interviewed only four students and two faculty members and released a report that found no evidence that discrimination existed in the MIRROR program. The types of incidents that constituted adverse job action in *Wideman* included threats of physical harm, delays in authorizing medical treatment for the employee, and solicitation of negative statements while refusing

13

to seek positive statements. (*Cf.* Defendants' fact-finding investigation of the MIRROR program and Defendants acceptance of the positive testimony of Ms. Crenshaw.) In this instance, the College formed an investigative committee to investigate complaints by students of problems with one of the College's programs. Such investigatory committees are not an uncommon practice by the College and are not adverse job action without evidence that such a committee was convened for the purpose of harassing the employee. Plaintiff offers only the subjective feelings of herself and certain students as "evidence" that the committee was convened with a retaliatory purpose. Feelings are not enough to raise a genuine issue of material fact in order to survive summary judgment. Fed. R. Civ. P. 56. Thus, summary judgment is due to be granted on this claim by Plaintiff.

While Plaintiff's complaint alleges that Defendants told students that they would take disciplinary action against Plaintiff, Plaintiff does not address this point in her brief or offer evidence in support of this contention. Since Plaintiff offers no evidence to create a genuine issue of material fact on this point, summary judgment is due to be granted as to this claim. Fed. R. Civ. P. 56.

Plaintiff has failed to present evidence to meet the second prong of her *prima facie* case of retaliation under Title VII – namely that adverse employment action was taken against her. However, this court finds that even if Plaintiff could demonstrate that adverse employment action was taken against her, summary judgment would still be due to be granted. If Plaintiff had demonstrated her *prima facie* case of retaliation under Title

VII, Defendants would then be required to articulate legitimate, non-discriminatory reasons for their actions. Under the facts of this case, the court finds no set of facts by which Plaintiff could demonstrate adverse job action in the move of her office to the new administrative building, the denial of the College to appoint her as its representative to the technical assistance meeting, or the alleged solicitation of negative comments from students. Thus, the court will only address the legitimate, non-discriminatory reasons articulated by Defendants for the threatened probation and the convening of the fact-finding committee.

On May 24, 1996, Defendant Moon wrote Plaintiff a letter outlining the reasons for her probation. Plaintiff's Ex. R. Said letter is self-explanatory and outlines several legitimate, non-discriminatory reasons for placing Plaintiff on probation. Plaintiff's attempt to demonstrate that these reasons are pretextual fails. Plaintiff claims that she did not know that she was not supposed to write certain comments on her time cards. She also contends that she did not take sick leave to work on a proposal as stated in ¶4 of Moon's letter. Rather, she states that she was on sick leave due to illness but continued to work on the proposal while at home. These explanations may be true. However, they do not demonstrate that Moon's use of these articulated reasons was a pretext for his decision to place Plaintiff on probation. As a matter of fact, Moon informed Plaintiff of her right to appeal. It makes no rational sense that Moon would inform Plaintiff of the way for her to seek review or reversal of his decision if he had intended to use these

reasons as pretexts for retaliation. Thus, even if Plaintiff had made out her *prima facie* case of retaliation as it relates to her threatened probation, summary judgment would be due to be granted on that issue.

This leaves only Plaintiff's claims regarding the fact-finding committee. Even if Plaintiff had made out her *prima facie* case of retaliation with regard to these allegations, Defendant offers legitimate, non-discriminatory reasons which Plaintiff fails to rebut as pretextual. Defendant convened the fact-finding committee. Similar fact-finding procedures have been used previously to investigate various situations at the College. Defendants' Ex. F, Moon's Deposition, at 37-38. Defendants had received complaints from several students and their family members as well as from concerned faculty. Defendants made a judgment to investigate via a three-faculty-member committee. The committee spoke to four students and two faculty members. The committee also gave Plaintiff the opportunity to explain her version of events, but Plaintiff refused to speak with the committee. At least one of the persons interviewed gave positive testimony about Plaintiff to the committee. Eventually, the committee concluded that there was not enough evidence to determine whether or not there was discrimination within the MIRROR program. Defendants' attempts to investigate with apparently disinterested faculty members and talk to several students demonstrates an attempt to conduct an impartial investigation. Plaintiff offers only her subjective feelings and the feelings of certain students as "evidence" that Defendants' articulated reasons were a pretext for

discrimination. That simply is not enough. Thus, even if Plaintiff had made out her *prima facie* case of retaliation as it relates to the formation and investigation of the fact-finding committee, summary judgment would be due to be granted on that issue.

*III.    42 U.S.C. §§ 1981 & 1983*

Plaintiff's complaint alleges that Defendants violated 42 U.S.C. §§1981 & 1983 in their treatment of her. This court notes that Plaintiff addressed neither of these claims in her memorandum in opposition to defendant's motion for summary judgment. Federal Rules of Civil Procedure Rule 56(e) outlines the requirements for Plaintiff to oppose a properly supported motion for summary judgment like the one filed by Defendants. "[T]he adverse party's response, by affidavits or as otherwise provided in this rule, **must** set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e) (emphasis added). Plaintiff has failed to do so with regard to her §§1981/1983 claims. Plaintiff did not brief these issues despite raising them in her complaint and Defendants having argued them in their initial brief.

Rule 56(e) further establishes that "[i]f the adverse party does not so respond, summary judgment, if appropriate, **shall** be entered against the adverse party." Fed. R. Civ. P. 56(e) (emphasis added). Plaintiff has produced no evidence to create a genuine issue of material fact for trial on her §§1981/1983 claims. Therefore summary judgment is due in favor of Defendants and against Plaintiff on her claims for violations of 42 U.S.C. §§1981 & 1983.

Even if Plaintiff had submitted evidence sufficient to "set forth specific facts showing that there is a genuine issue for trial," this court would still find that summary judgment is appropriate on Plaintiff's §§1981/1983 claims for money damages. All Defendants are state actors. As stated by the Eleventh Circuit, the "Supreme Court has ruled that 'the express cause of action for damages created by § 1983 constitutes the exclusive federal remedy for violation of the rights guaranteed in § 1981 by state governmental units.'" *Pearson v. Macon-Bib County Hosp. Auth.*, 952 F.2d 1274, 1278 n. 3 (11th Cir. 1992) (quoting *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 733 109 S. Ct. 2702, 2721 (1989)). Stated another way, "section 1981 can provide no broader remedy against a state actor than section 1983." *Busby v. City of Orlando*, 931 F.2d 764, 771-772 n. 6 (11th Cir. 1991). Thus, these two claims should be addressed as one for purposes of a substantive summary judgment analysis. *Richardson v. Leeds Police Dept.*, 71 F.3d 801, 803 n. 2 (11th Cir. 1995).

As state actors, Defendants are immune from §§1981/1983 suits for money damages under the Eleventh Amendment to the United States Constitution. *Edelman v. Jordan*, 415 U.S. 651, 662-663, 94 S. Ct. 1347, 1355-1356 (1974). *See also Quern v. Jordan*, 440 U.S. 332, 337, 99 S.Ct. 1139, 1143 (1979) ("[A] suit in federal court by private parties seeking to impose a liability which must be paid from public funds in the state treasury is barred by the Eleventh Amendment"). The only way Plaintiff could bring a §§1981/1983 suit for money damages against these Defendants is if the state

unequivocally waived its immunity or if Congressional legislation operates as a waiver of said immunity. *Kennecott Copper Corp. v. State Tax Comm'n*, 327 U.S. 573, 577, 66 s. Ct. 745, 747 (1946). Neither of these types of waivers has occurred in this case. Thus, summary judgment is due to be granted on Plaintiff's claims for money damages under §§1981/ 1983 even if Plaintiff had raised a genuine issue of material fact on this point.

## Conclusion

Based upon the above analysis and in accordance with the separate order this day entered;

It is therefore **ORDERED** that Defendant's motion for summary judgment (doc. 20) be and hereby is **GRANTED**.

**DONE and ORDERED** this the /2 day of May, 1999.

Inge P. Johnson
United States District Judge